This is the case of Lila Zuniga v. Major League Baseball, 1-20-1264. You have before you the 1st District, 2nd Division Appellate Court, and the Justices are Terry Lavin, Aurelia Puczynski, and myself, Justice Smith. The procedure is as follows. First, the appellant gets 12-15 minutes without being interrupted, and then we will ask our question. Then the appellee follows the same procedure, and then the appellant will finish up. With that in mind, you may start. I represent the appellants in this matter. The relevant factual record before the court on this appeal is undisputed and straightforward. The plaintiff appellee possessed a physical paper ticket for admission to Wrigley Field. She used that ticket to gain admission. It is undisputed that she did not read the terms of that ticket before gaining admission, but she had the opportunity to do so. It's also undisputed, and there is no evidence that she did not attempt to but failed to read the terms because it was unintelligible to her. Based on those undisputed facts, the court should consider the tickets that have been submitted as part of the record. Those tickets contain on their front a notice that they are subject to terms and conditions on the reverse. On the reverse, there is a short form of the terms and conditions that contain an arbitration agreement. There is also a link, cubs.com slash ticket back, which contains the long form on the Internet of the terms and conditions where there is also an arbitration agreement. The lower court in this case decided that that arbitration agreement was procedurally unconscionable based upon the print size. The lower court erred in two ways. First, the law is clear that the terms and conditions are not procedurally unconscionable due to the print size. But second, even if there is a degree of procedural unconscionability, the court did not undertake the crucial second step of its analysis, which is to look at within the total context of the agreement and given the strong presumption in favor of arbitration agreements, whether the agreement should still be enforced despite an element of procedural unconscionability. So based upon those two errors, this court should reverse and order the arbitration agreement enforced. Briefly, before reaching the merits, I'd like to discuss the standard of review. There was disagreement between the parties over the standard of review in this case. It is a de novo standard of review. I think you'll find that we agree with you on that. I'll move on, Your Honor. On to the merits. The arbitration agreement at issue is not procedurally unconscionable. The fault size here is standard fine print. It is a practical reality of modern life, and courts have recognized that reality, that we deal with fine print in terms and conditions. In the circumstances here, it's important to consider the practical realities. This was a paper ticket to a baseball game. It's something that's meant to be put in the pocket of a fan that they can easily pull in and out and use. It's not practical to have a multi-page eight and a half by 11 document that contains all the terms and conditions that is printed out and given to the fan as their ticket. It's similarly not practicable to have fans stop at the gate and be read the terms and conditions that they are subject to upon entering Wrigley Field and agreeing to watch a baseball game there. The modern life practical reality is tickets have fine print, and fans are subject to that fine print when they enter into a ballpark. Here, that fine print contained an arbitration agreement, and it's not procedurally unconscionable. The cases finding arbitration agreements procedurally unconscionable are informative here for the court's decision. First, as discussed in the briefing, Frank's maintenance found an agreement to be procedurally unconscionable, but in that situation, the notice of the agreement on the front of the document was stamped over, so it couldn't be read, and the effect of stamping over the notice was to suggest that there was nothing else in the document that the consumer needed to consider as part of the agreement. That clearly is not the circumstances here where the notice on the front of the ticket was clearly viewable, and the remainder of the terms were part of the agreement that the fans were put on notice that they were subject to. Likewise, in the Razor v. Hyundai decision, also discussed in the party's briefing, there was no evidence that the terms and conditions had been given to the consumer before the purchase. In that situation, dealing with terms and conditions for a car, the relevant agreement was at the end of a user manual that was placed in the glove compartment of a car that was only available to the consumer after the purchase had already been made. Obviously, those facts are clearly distinguishable here. The ticket had been provided in advance. It was easily accessible to the consumer to review the terms. They were not hidden. So the Razor case and the Frank's case establish what is necessary to find some procedural unconscionability, and the facts here simply don't rise to that level. But even if the court were to consider this is a procedurally unconscionable agreement, the analysis isn't done there. The court in this case skipped the second step, which is even if there is a degree of procedural unconscionability, should we still enforce this agreement, given the strong presumption in favor of the enforcement of arbitration agreements? There's no analysis on that crucial second step below, and there are two cases that are highly informative for this court discussed in the party's briefing, both here and below, which show why this agreement should be enforced. The first case is the Kinkle case, Kinkle v. Singular Wireless. The facts of that case are significant here. If you look at the decision in that case, the fine printed issue is actually included as an exhibit at the end of the case. That fine print looks very much like the fine print here. It is small. It is admittedly fine print. The court in that case found that there were 123 lines of tiny single space text per page in a three page agreement. The arbitration agreement was buried within that fine print. The court found, and I quote, that there was a maze of fine print where it was unlikely to be noticed, much less read. Those facts suggest that there is a degree of procedural unconscionability in that agreement. But despite that finding, the court still went on to enforce the arbitration agreement. The reason for that is because a strong presumption in favor of arbitration and the absence of other factors of unconscionability. There was no procedural or I'm sorry, there was no substantive unconscionability in that case. So even with a degree of procedural unconscionability, it was still an enforceable agreement. The best case, BESS v. DIRECTV, plays out along the same lines and is similarly informative here. In BESS, there was a tenfold panel, a ten panel fold out pamphlet with eight point font. The arbitration agreement was buried within the eight point font in the middle of the pamphlet. There, the court did find a degree of procedural unconscionability. But despite that degree of unconscionability, it still enforced the arbitration agreement based upon that crucial second step of the analysis. So based upon Kinkle and based upon BESS, the court should consider whether even if there is some procedural unconscionability here with the fine print, this arbitration agreement should be enforced. And it should, based upon the factors that are laid out in those cases. There was no finding here of substantive unconscionability. It was a bilateral agreement. It applied equally to the parties, except in one crucial factor, which actually favors the consumer, that the Cubs had agreed that they would pay for the fees of the arbitration agreement. So there's no procedural or there are no substantive concerns here about the unconscionability of the agreement. The court also must consider the strong presumption in favor of the enforceability of these agreements. If the terms are provided for the consumer, it doesn't matter if the consumer didn't read them, didn't take the opportunity to review them. They were there. They could have been reviewed. The law enforces such agreements. Ultimately, what we're dealing with here is a consumer that had the opportunity to review these terms and conditions. There is no evidence that she was unable to review the terms and conditions. She accepted them when she went into Wrigley Field and watched a baseball game. She is now attempting to avoid the force of those terms and conditions after the fact, based on strained legal arguments. There is no factual or legal support for allowing the consumer to escape the force of these terms and conditions, and specifically the arbitration agreement. There is a strong presumption in favor of the enforceability of that agreement, and this court on a Doonover review should enforce it. With that, I'll stand on the arguments of my briefing, and I'm happy to answer any questions from the panel. The first question I've got is buried in there is a section that says you have seven days to waive. That, to me alone, is unconscionable. And then the way you waive it is not clearly defined and almost impossible to get to. An ordinary person probably wouldn't be able to get to it in a week or several weeks. So I find that highly unusual. If anything, that should be changed. Your Honor, there are cases that find that even when there is no opt out allowed, that it's not procedurally or substantively unconscionable. So opt out is there may well be. But as in this case, in the three cases you cite, in each case, you had an opportunity over time to review it before you accepted or rejected it. And even in the what was the best or bar or whatever it was case, the one where you accept it, but you could reject it after. That is not the opportunities this ticket allows. Your Honor, there have been fans that have rejected the arbitration agreement that is contained here. There is a procedure. It lays out specifically who you contact and how you contact them. You think that's clear? It delineates the information that needs to be provided and who should. But is it clear? Is it adequate for an ordinary person? We believe it is, Your Honor. Well, I got to tell you, I've been a white sex other side of town here, season ticket holder for 40 years. OK, and I've gone to a lot of games. I've given a lot of tickets away. I don't think anybody has ever read the back of the ticket to see what the exculpatory language is. I mean, if this were a Cubs game where they had Harry Carey magnifying glasses day and everybody was encouraged to look at the back of the ticket, I might go your way. It seems to me that the procedural unconscionability here is higher than it is at best. That's the way I look at it. I know you say that the trial court didn't go to that step of the analysis, but that's where I think you might have issues. The only case, you know, realistically that actually goes somewhat in your favor is the McDonald's case. But there, I mean, people know they can still waive that thing. They don't have to accept it. But that's the closest of any of the cases I read that stands for your proposition. Your Honors, in Bess and Kinkle, the faunted issue is approximately six point font or eight point font. This is four point. Your Honor, you're saying that this is four point font? Yeah. I don't know if that's in the record, Your Honor. No, I know it is. This font. I can read the ticket with triple magnifying glass. That's four point font. I just thought I read. Since you didn't know that, I thought I'd tell you. Your Honor, given the small print here, it's a practical reality of trying to fit terms on a ticket. The ticket could be made larger. It could be made a full page of the print could then be larger. But as the Seventh Circuit has recognized in the proceeding case, as other courts have recognized, given modern realities, that's not practical. So there have to be concessions with small print and with fine print in modern contracts. The Cubs ticket, even though people may not read it, is still available to them. And the fact that somebody chooses not to read the terms and conditions does not mean that they are not bound by them. So in this situation, there is clear evidence that the consumer had an opportunity to read the ticket beforehand, but she simply chose not to. That does not excuse that consumer from having the terms and conditions apply to her. On the opt out, the seven day opt out is a reasonable time period, given that this is an event. It's not a purchase of a car. It's not a long term cell phone contract that someone's going to have for years. It is a single afternoon or evening that you'll spend at the ballpark. And if there are claims that arise out of it, you'll know those claims immediately and you'll have an opportunity to decide immediately whether or not you want to follow or opt out. And again, the agreement lays out the procedure by which someone could do that. But finally, that does not, again, render something procedurally unconscionable. The Tortore Tielo case, 379, Illinois Act 3rd, 214, found that even when there was an opt out only for the party enforcing the agreement, that that wasn't unconscionable. So that goes even further. It's not saying there's no opt out. It's saying that the company here that is providing the agreement can opt out, but the other side is stuck with it. The court still found in that situation that there was no substantive or procedural unconscionability based on the opt out situation. So in that environment, you can't find that simply because there is a seven day opt out period instead of a longer one, it renders the agreement unconscionable. Isn't there a state statute that protects the Cubs in their corporate entity? There is, Your Honor, but that statute has been interpreted to only apply to the owner or operator of a ballpark, and Major League Baseball potentially is not the owner or operator. I wasn't sure about that, and I thought you'd have it clearer than anything I found. Yes, the Baseball Facilities Act protects the owners or operators of ballparks. Notably, the plaintiff's firm in this case has challenged the applicability of that to both the Cubs and Major League Baseball. So that would be a subjective dispute if this case were to go forward in the courts instead of arbitration. Okay. I have a question, Jim. The website, which is the longer part of the whole agreement, the whole contract, includes a section that says you have a right to reject this arbitration agreement, but you must exercise this right promptly. Then it says within seven days by mailing a written opt out notice postmarked after the date of the event, seven days, you send your request to Chicago Cubs at this address. And then it says the request must include your full name, address, and account number. What if you don't have an account number? This agreement says you have to have an account number to reject it. What if you don't have an account number? If you don't have an account number, you don't need to include it. Well, it doesn't say that, does it? It says you must include your full name, address, account number, and the statement, I reject the arbitration agreement contained on my event ticket. It says you must. That doesn't say you have to include your account number if you have one, or if it's available, or say you don't have one if you don't have one. There's no other here. It's you must include your account number. And when I look at this, I read it, okay, if you don't have an account number, you can't opt out. Your Honor, there is no requirement if you don't have an account number to provide an account number. But even if that is found to be unclear or a degree of procedural unconscionability, that alone is not enough to make this agreement unenforceable. It says you have to include it, and you don't have one. It says must. Must is the word here, the operating word here. If you don't have one, it doesn't give you option two, oh, I don't have one. It says you must include your full name, address, account number. And incidentally, segue for a minute. I agree with Justice Smith that the seven-day rule seems to me a little hard to manage if you've been smacked in the head with a baseball and need multiple surgeries or something. What are you going to do if you're medicated in the hospital? Where's that seven days run to? You have time to consult an attorney when you're in the hospital recovering from a smack in the face? Do you have time to have your family do all of this? No, they're worried about your health. So the seven days is a problem for me, but the must include account number is a very big problem for me. And I just am surprised that you don't have a better explanation for it. Your Honor, the terms are what they are. But even if there is a finding that you can't opt out of this without an account number, that simply places you in the universe of agreements where there is no opt-out. And the law has established that you can have an arbitration agreement with no opt-out, and that does not make it procedurally or substantively unconscionable. It's simply a binding agreement for which there is no opt-out period. Here, by providing an opt-out period, the Cubs were going above and beyond what was required to make something so it was not procedurally or substantively unconscionable. So to have that held against them goes contrary to the law that they're actually trying to make this more consumer friendly, where it was not required under the law. Any more questions? I'm good. Oh, any further questions? No. Pally? Yes, me. It shows Clifford Law, it doesn't show your name. I'm sorry, Your Honor, that's the setup at my office here. We'll have to change that for next time. And I do apologize. What is, I recognize you, but I don't know your name. It's Tracy Brownmire. My name is Tracy Brownmire. You're on the brief. And may it please the court, I appear today on behalf of the plaintiff at Pally Laya Zuniga. As this court knows, this case is on appeal over issues of fairness of forcing arbitration on an unsuspecting consumer using a maze of fine print. These consumers are those like Ms. Zuniga, who do not know what arbitration is or what they are giving up just by going to a baseball game. Despite the circuit court's finding of fact to the contrary and the reality that is shown in the briefs and the exhibit, Major League Baseball asserts again here today that the tiny font on its tickets is conspicuous and legible, and that it appropriately directs ballpark patrons to terms and conditions located in another medium on its website, which contain the arbitration agreement at issue here. And this argument for reversal of the circuit court's order denying its motion to compel arbitration fails. The circuit court, even if there could be a contrast here, the circuit court did not err in finding that Ms. Zuniga did not knowingly enter into an arbitration agreement with Major League Baseball because the arbitration agreement was unconscionable procedurally and substantively. Illinois law is clear that an arbitration agreement is procedurally unconscionable if it is unreadable, and that's the case here. Size four font, as your Honor pointed out. Furthermore, in Illinois, courts are more likely to find unconscionability in a case like this one where a consumer is involved as opposed to a case, a business to business contract, and when there is a disparity in bargaining power and when the clause at issue is on a pre-printed form. This is exactly that case. The circuit court made a finding of fact on the readability of this arbitration clause, and that finding should be affirmed by this court. Procedural unconscionability consists of some impropriety during the process of forming the contract that deprives a party of a meaningful choice. Or put another way, it refers to a situation where a term is so difficult to find, read, or understand that a plaintiff cannot be fairly said to have been aware of what she was agreeing to, and it takes into account that lack of bargaining power. That, again, is exactly the situation in this case. There was no bargain here, and there was no bargaining power here. Major League Baseball essentially concedes that. They say she just had the opportunity to notice the contract. But where an arbitration clause is hidden in a Mesa fine print, as it was here on a physical ticket, it may only be considered part of the bargain if it was actually brought to the consumer's attention. And that didn't happen here. Major League Baseball is relying on the conspicuousness of the statement on the back of the ticket and the fine print on the front of the ticket. And in so doing, Major League Baseball is ignoring the circuit court's finding and the reality that this arbitration statement on the back of the ticket is printed in font so small that it is actually unreadable. And when you look at the ticket, it's easy not to notice the fine print at the bottom of the front. What you do notice is the game day, the game time, where your seat is, where your section is. If you even get to the point of flipping the ticket over and looking at the back of it, what you notice is that the Cubs want you to take an Uber that day to get home. There's an advertisement. The Cubs did not, in Major League Baseball, did not bold the arbitration clause, put it in, underline it, put it in another color. All these ways of emphasizing that there's an agreement on the back and all factors that are considered by the cases in Illinois. They could have made, and as they concede here today, they could have made this arbitration clause bigger, and they didn't. Okay, how could they have done that, in practical terms, when you've got 40,000 people going to a game? In practical terms, Your Honor, there's about a third of the back of the ticket that is taken up by an advertisement that doesn't need to be. And you can certainly, if the Major League Baseball is going to stick to this route where they're directing people to a website in order to view full terms and conditions, which they say are controlling, they can certainly simplify the amount of, they can simplify the language, they can simplify the amount of language on the back of the ticket. These are just suggestions. This is really something, or they can make the ticket bigger. I mean, there's a lot of ways to do this, and Major League Baseball certainly has the resources and wherewithal to make sure that the terms and conditions of its tickets to its patrons are actually accessible, readable, and available to them, if Major League Baseball wants to do that. They're choosing not to do that here. Would you agree that the over, just as a general statement, that the overwhelming weight of authority seems to uphold these sort of arbitration agreements in situations like this? And if so, why is this case different? I would say the cases that have upheld arbitration agreements, even where there is a finding of a degree of procedural unconscionability, are different because in those cases, and as has been discussed a bit here today already, the ability to opt out after the fact is broader, more available, typically 30 days or longer, and it's over a period of time. The contract, I should say, takes place over a period of time, such as a service agreement for satellite television or cell phone service. Purchasing a computer online where the terms and conditions are immediately available to the consumer. This is not the situation here. A person can go and buy a paper ticket. They might not have internet access. Major League Baseball just presumes that they do. And a person can go and buy a paper ticket and minutes later walk into a baseball game, completely unsuspecting of what is going on here. I don't even know if they handle paper tickets anymore. Everything is online now. They do. And that's actually something that was cited in the briefing in the circuit court was during the 2018 baseball season when this was going on. Major League Baseball advertised to its consumers that not only could they purchase tickets online, but that tickets were also available at the box office on or before game day. So that is something that is still available. And it's something that plenty of people do. And this is an example that it happens because patrons like Miss Nuniga procure baseball tickets or are given baseball tickets without going online. So the idea that this agreement is available to the consumer just because it's on the internet is completely unrealistic. This is not an internet event. This is not an internet purchase. This is a real life event. And furthermore, when looking at the unconscionability and the degree of unconscionability, not only do you look at the face of the terms of the agreement, but also you have to look at the nature of the underlying claims. Illinois courts are clear about that. And in this case, unlike a service agreement for cell phone service or satellite television, for example, people are getting hurt at baseball games. This is not the only time that this has happened. This is not a unique situation or an outlier. This is the type of claim that is anticipated by Major League Baseball when they write this arbitration clause. And they know that the seven-day opt-out period is completely unrealistic and unavailable for anybody who has any kind of major injury. It's not something that is ever going to happen. The only reason that Major League Baseball would limit the time to something as short as seven days is because they know that. The end result is that people who are seriously injured cannot meet that opt-out period. And furthermore, as noted by this court, even if somebody does get to the point where they've been able to look at the physical ticket, they've been able to get out their magnifying glass and read the fine print on the back. And then they actually do have internet access and go to the internet and read the arbitration agreement. This is an onerous multi-step process. Even after they do that, assuming they've done it within the seven-day opt-out period, then the unsophisticated consumer reads the requirements to opt out of arbitration, and it says that the person must have an account number. This is not an issue. This is not a case of a sophisticated business-to-business contract or something where everybody has legal counsel on standby to explain to them that, well, if you don't have an account number, you can contact the Cubs anyways, and they'll work it out. This is a person who is reading an unsuspecting consumer, unsophisticated consumer, who, assuming they get to this point, reads the ticket and realizes they don't meet the compliance requirement in order to be able to opt out of an agreement that they never agreed to anyway and that they don't fully understand. Okay. And for those reasons, I ask this court to affirm the lower court's order denying the motion to compel arbitration. Any further questions? None from me.  Thank you, Your Honor. The test before the court is not whether the language could have been made bigger. Print can always be made bigger. There are practical concessions, though, that would need to be made if you were going to make the language bigger. There may be less language that's included, so therefore the short form of the agreement is less complete. There may be a larger ticket, so it's less convenient for the consumer. Or as the Seventh Circuit discussed in Pro CD, if you're going to move to a situation where ticket terms and conditions are not enforceable because you have to fit them on a ticket, you're going to have an unwieldy procedure where every consumer has to acknowledge the terms in some form as they're entering the event or as they're purchasing tickets. And that itself is going to be unfriendly to the consumer and in a way that frustrates what they're trying to do, get into a baseball game. So given the practical realities here, there will be fine print. That's a fact of modern life. The question before the court is whether that fine print was so unintelligible to render this agreement unenforceable. It's instructive to look at some of the cases that found arbitration agreements were enforceable, even when they were not provided to the consumer at the time of contracting. We cite a number of those in our brief. The Zobarist decision, Zobarist v. Verizon Wireless. The trial court found that the arbitration agreement was provided in a separate brochure from the contract. The consumer didn't have it at the time that they were contracting. There was a degree of procedural unconscionability there, but because of the strong presumption in favor of enforcing these types of agreements, it was still enforced. Here, there is no dispute that the terms were available to the consumer. This isn't a situation where they're in a completely separate document that's unavailable. The consumer here simply didn't read the terms. So given the strong presumption and the absence of substantive unconscionability here, they should be enforced. Likewise, the Wigington decision, Wigington v. Dell, includes similar facts where the consumer never saw the terms before the purchase. The lower court found that. That was, to a degree, procedurally unconscionable. But the agreement was still enforceable given the practical realities of the transaction and given the strong presumption in terms of enforceability. So here, we do not dispute that the print was small. It was fine print because it had to fit on the back of a ticket. But the short form of the agreement was understandable to the consumer. The long form of the agreement was available online easily and spelled out in large font all the terms and conditions. Even if there is a finding that the consumer could not have opted out here because of a requirement that there needed to be an account number, the absence of an opt-out does not render this agreement unenforceable. Courts have regularly enforced arbitration agreements that have no opt-out provision. So the fact that there was an opt-out provided should not be held against the Cubs here. They were going beyond what was needed to make an agreement enforceable here in a consumer-friendly way. Ultimately, going to a baseball game is a transaction. You accept a license to go into Wrigley Field. The terms and conditions of that license need to be spelled out somewhere. They were spelled out here clearly on the back of the ticket and online through a link that was easily accessible. The fact that the consumer did not read those terms and conditions does not excuse the consumer from having them enforced against her. Because of the strong presumption in favor of these types of arbitration agreements and the absence of other factors of unconscionability, the agreement here should be enforced. Okay, thank you. Thank you both. Oh, Tracy, your name is up there now. I appreciate both your arguments. They were enjoyable. This is, I could say, kind of a fun case, a little different than a lot of them that we have. But again, thank you. The briefs are very well done and you had the latest cases. We'll let you know as soon as the three of us get together.